**U.S. Department of Justice**

Cyn
7·22·19

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

*United States Attorney*
*District of Maryland*

2019 AUG -5  PM 12: 28

CLERKS OFFICE
BALTIMORE

BY_____DEPUTY

| | | |
|---|---|---|
| Jeffrey J. Izant | *36 South Charles Street* | *DIRECT: 410-209-4982* |
| *Assistant United States Attorney* | *Suite 400* | *MAIN: 410-209-4800* |
| *jeffrey.izant@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0716* |

July 23, 2019

Ryan Burke, Esq.
Law Offices of Ryan Burke
812 North Calvert Street, Suite One
Baltimore, Maryland 21202
ryan@ryanburkelaw.com

**BY ELECTRONIC AND U.S. MAIL**

      Re:    <u>United States v. Kevia Charisse Price</u>, Criminal No. RDB-19-0185-2

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (the "Agreement") that has been offered to your client, Kevia Charisse Price (hereinafter the "Defendant"), by the United States Attorney's Office for the District of Maryland (the "Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Wednesday, August 7, 2019**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense(s) of Conviction</u>

      1.    The Defendant agrees to plead guilty to Count One of the Indictment charging the Defendant with conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. The Defendant admits that the Defendant is, in fact, guilty of the offense(s), and will so advise the Court.

<u>Elements of the Offense(s)</u>

      2.    The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows.

<b>Count One:  Conspiracy to Distribute and to Possess with Intent to Distribute CDS</b>

      a.    That during the period of time alleged in the Indictment, in the District of Maryland –

Rev. August 2018

    i.  Two or more people agreed to violate the Controlled Substances Act;

    ii.  The Defendant knew the unlawful purpose of the agreement;

    iii.  The Defendant joined the agreement willfully, that is, with the intent to further its unlawful purpose; and

    iv.  It was reasonably foreseeable to the Defendant that the agreement involved 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

### Penalties

  3.  The penalties provided by statute for each offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Min. Prison | Max. Prison | Supervised Release | Max. Fine | Special Assessment |
|-------|---------|-------------|-------------|--------------------|-----------|--------------------|
| One | 21 U.S.C. § 846 | 5 years | 40 years | Min: 4 years Max: 5 years | $5 million | 18 U.S.C. § 3013(a): $100 |

  a.  *Prison*: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b.  *Supervised Release*: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

  c.  *Restitution*: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

  d.  *Payment*: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

  e.  *Forfeiture*: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

  f.  *Collection of Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (i) the full amount of the fine or restitution is nonetheless due and owing immediately; (ii) the schedule of payments is merely a minimum

Rev. August 2018

schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (iii) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that, by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

Rev. August 2018

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" provisions below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced case, and the Court will find the Defendant guilty.

h.     By pleading guilty, the Defendant also will be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that, if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991–98. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

### Count One: Conspiracy to Distribute and to Possess with Intent to Distribute CDS

a.     This Office and the Defendant further agree that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2D1.1(c)(8), the applicable base offense level for Count One is **24** because the Defendant's offense involved between 500 grams and 2 kilograms of cocaine.

Rev. August 2018

## Acceptance of Responsibility

b.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease, in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offenses; (iii) gives conflicting statements about the Defendant's involvement in the offenses; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      This Office and the Defendant further stipulate and agree that the Defendant's criminal history category is V.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

9.      This Office and the Defendant stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **60 months (i.e., 5 years) imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw her plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that, if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor this Office will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw her plea.

## Obligations of the Parties

10.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and

Rev. August 2018

conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.  At the time of sentencing, this Office will move to dismiss any open count against the Defendant.

### Forfeiture

11.    The Defendant understands and agrees that, as a result of her guilty plea, she will not be permitted to own, possess, or use a firearm or ammunition.

12.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

a.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

i.    Six hundred dollars in United States currency.

b.    The Defendant agrees to consent to the entry of an Orders of Forfeiture for the property described in the above subparagraph and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

c.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

d.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint.  The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Rev. August 2018

6

## **Defendant's Conduct Prior to Sentencing and Breach**

13.     Between now and the date of sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. §3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

14.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (a) this Office will be free from its obligations under this Agreement; (b) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C); and (c) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## **Waiver of Appeal**

15.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal a sentence imposed in accordance with Paragraph 9 of this Agreement (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

Rev. August 2018

i.      The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

16.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned case and agrees not to file any request for documents from this Office or any investigating agency.

## Consequences of Vacatur, Reversal, or Set-Aside

17.     If a conviction entered pursuant to this Agreement is vacated, reversed, or set aside for any reason, then this Office will be released from its obligations under this Agreement, and any prosecution that is not time-barred as of the date of the signing of this Agreement (including any counts this Office has agreed to dismiss) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.  The Defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this Agreement is signed, and any applicable statute of limitations will be tolled from the date of this Agreement until 120 days after the vacatur, reversal, or set aside becomes final.  The Defendant waives any defenses based on double jeopardy, pre-indictment delay, or the Speedy Trial Act.

## Court Not a Party

18.     The Defendant expressly understands that the Court is not a party to this Agreement.  In the federal system, the sentence is imposed by the Court, and the Court is under no obligation to accept this Agreement.  In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that she may withdraw her plea.  If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this Agreement.  The Defendant understands that neither this Office, her attorney, nor the Court can make a binding prediction or promise that the Court will accept this Agreement.  The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant.  There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement.  No changes to this Agreement will be effective unless in writing, signed by all parties, and approved by the Court.

Rev. August 2018

8

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Sincerely,

Robert K. Hur
United States Attorney

By:

Jeffrey J. Izant
Assistant United States Attorney


I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8-1-19
Date

Kevia Charisse Price


I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/1/19
Date

Ryan Burke, Esq.

## ATTACHMENT A
## STATEMENT OF FACTS

*The undersigned parties stipulate and agree that, if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Kevia Charisse Price, a/k/a Kevia Charisse Spivey, a/k/a Kevia Charisse Spivey-Price ("Price"), was 43 years old, and a resident of Queens, New York, and Hagerstown, Maryland.

On June 24, 2016, Price was convicted in Queens County Criminal Court of third-degree possession with intent to sell narcotics, in violation of New York Penal Law § 220.16(1). Price ultimately was sentenced to 2 years' incarceration, to be followed by 3 years of supervised release. On March 28, 2018, Price was released on parole and began serving the post-release supervision term of her sentence.

At some point thereafter, Price began renting an apartment in Hagerstown, and paid for the rental using a combination of credit card and money order payments. In the fall of 2018, law enforcement received information indicating that cocaine was being distributed from the apartment that Price was renting. The information that law enforcement received also indicated that the cocaine being distributed from Price's apartment was being acquired in New York City.

By mid-December 2018, Eric Arnette Smith was living in the Hagerstown apartment with Price. Smith had previously been convicted in the Circuit Court of Maryland for Frederick County of possessing with intent to distribute cocaine, received a sentence of 30 years' imprisonment, and was released to parole on March 20, 2018.

Just before December 15, 2018, investigators learned that Smith and Price would be traveling to New York City. Officers then contacted the management company that leased the Hagerstown apartment to Price, and obtained the company's permission to conduct a canine scan of the interior hallways of Price's apartment building.

Law enforcement then began conducting surveillance of the apartment building. On December 16, 2018, after Smith and Price had left the building, law enforcement conducted the canine scan of the interior hallways. During the scan, the canine positively alerted at the door to Price's apartment, suggesting the presence of controlled substances or odors therefrom. Officers continued physical surveillance of the building until December 18, 2018, when they observed Smith, Price, and a third individual return to the building in a vehicle that was later identified as a vehicle rented from Enterprise by one of Smith's relatives.

The next day, December 19, 2018, law enforcement executed a search warrant at Price's apartment. Upon entry, officers located Smith and Price in the master bedroom. Officers searched the bedroom, including a walk-in closet that contained both men's and women's clothing. Inside the closet, officers located a locked safe that was partially enclosed by a white garbage bag. Once officers located the keys to the safe on top of a nightstand in the master bedroom, they opened the

1

safe and found 6 folded $100 bills—amounting to $600 in U.S. currency lying on top of a number of plastic bags. Directly underneath the currency, officers found 2 clear plastic bags containing a tan crystalline substance that appeared to be cocaine. The clear bags were lying on top of a black plastic bag, which officers searched and found 4 additional plastic bags, each of which contained a large amount of a white powdery substance that also appeared to be cocaine.

The substances recovered from each of the plastic bags were field tested, and the field test results indicated the presence of controlled dangerous substances. The substances were later analyzed by the Maryland State Police Forensic Sciences Division, which confirmed that the 6 plastic bags recovered by law enforcement contained a cumulative total of approximately 800 grams of cocaine. The Defendant stipulates and agrees that this amount of cocaine was intended for distribution, rather than personal use.

Elsewhere in the closet, officers located a Western Union transaction receipt in the name of Eric Smith. Investigators subsequently obtained additional Western Union records indicating that Smith had wired hundreds of dollars to Price in multiple prior transactions.

Officers also searched a purse that was lying on top of a dresser in the master bedroom. Inside the purse, officers located a New York State identification card in the name of Kevia C. Price, and a receipt issued by Peter Pan Bus Lines reflecting that on December 13, 2018, Price used cash to purchase a ticket on a 2:00 p.m. bus scheduled to depart that same day from Baltimore, Maryland, to New York City.

After law enforcement completed the search, Price was Mirandized, waived her rights, and voluntarily agreed to be interviewed. During her interview, Price admitted that the suspected controlled substances were cocaine, and that all of the cocaine belonged to her. Price also admitted that she traveled from Baltimore to New York on December 13, 2018. Price stated, however, that Smith did not know anything about the cocaine.

Smith and Price were both arrested and charged with various narcotics-related offenses in Washington County, where they were initially both detained. On December 27, 2018, Price made a phone call from the facility in which she was detained. During the call, which Price was advised was being recorded, Price discussed her charges and stated, "I ain't distribute shit. I ain't get a chance to."

On February 5, 2019, Price was released from Washington County custody, and received a phone call from Smith, who remained detained. During the call, which both parties were advised was being recorded, Price asked Smith if he told law enforcement that he had been in New York, and told him not to admit that he had been in New York.

Rev. August 2018

2

All of the events described above took place in the District of Maryland.

SO STIPULATED:

Jeffrey J. Izant
Assistant United States Attorney

Kevia Charisse Price
Defendant

Ryan Burke, Esq.
Counsel for Defendant